IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANTONIO DEWAYNE HOOKS,              )
                                    )
                Plaintiff,          )
                                    )         CIV-17-658-M
                                    )
BETHANY POLICE DEPARTMENT,          )
et. al.,                            )
                                    )
                Defendants.         )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

## I. Background

Plaintiff's claims initially arise out of his arrest by Defendants Chris Harding and James Irby, each of whom are officers with the Bethany Police Department. Doc. #86, Second Amended Complaint ("Am. Comp.") at 13-14. Plaintiff was subsequently charged with two counts of Assault & Battery Upon a Police or Other Law Officer, Possession of a Controlled Dangerous Substance With Intent to Distribute, and Possession of a Controlled Dangerous Substance Within 2,000 Feet of a Park – Cocaine. Oklahoma Supreme Court Network, Okla.

Cnty. Dist. Ct. Case No. CF-16-8283.[1]  On October 23, 2017, Plaintiff entered a

plea of *nolo contendere* to each of these charges.  *Id.*[2]  Plaintiff was sentenced to

incarceration of four years with credit for time served.  *Id.*

He further alleges that on October 5, 2016, a classification guard moved

Prior to his sentencing, Plaintiff was booked into the Oklahoma County Jail

on October 1, 2016, as a pre-trial detainee.  Am. Comp. at 16, 19.  Plaintiff

contends that when he was booked into the jail, he had a swollen face and stitches

in his eye brow.  Am. Comp. at 19.  He states that he passed by two nursing

stations and contends it was obvious he needed to be placed in 13B or 13D in

medical status.  *Id.*

He further alleges that on October 5, 2016, a classification guard moved

him from 4D classification to 4A, which is a segregated pod for rival gang

members.  Am. Comp. at 18.  Plaintiff contends the initial booking guard on

October 1, 2016, and the classification guard who moved him on October 5, 2016,

failed to follow policy and procedure by not inquiring as to his gang affiliation or

as to whether he needed to be housed with his gang.  Am. Comp. at 16, 18.  He

also claims the jail staff overlooked their own records of his gang affiliation and

---

[1]   http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-2016-8283&cmid=3460519

[2] At some point, Plaintiff's third charge was amended to Possession of Controlled Dangerous Substance.  *Id.*

photographs of his gang tattoos.  Am. Comp. at 19.  He contends this resulted in his being housed with rival gang members who subsequently committed an assault on Plaintiff and he nearly lost his life.  Am. Comp. at 14, 17, 18, 20.  As referenced in Plaintiff's Second Amended Complaint and verified by state records, three individuals were charged with Assault & Battery by Means or Force as is Likely to Cause Death and Conspiracy to Commit a Felony, to Wit: Assault & Battery by Means or Force Likely to Cause Death.  *See* Oklahoma Supreme Court Network, Okla. Cnty. Dist. Ct. Case No. CF-16-8322;[3] *see also* Doc. #88 at 11-12; Doc. #89 at 5-6 (wherein Defendants Oklahoma County Sheriff John Whetsel and Kayode Atoki describe in separate Motions to Dismiss the alleged assault perpetrated on Plaintiff by three other pre-trial detainees, each of whom are named as defendants in CF-16-8322).

Following this assault, Plaintiff was transferred to OU Medical Center where he was treated for his injuries.  Am. Comp. at 12-13.  When he returned to the Oklahoma County Jail, his jaw was wired shut.  *Id.*  In early November 2016, Defendant Jerry Childs, D.O. examined Plaintiff and attempted to "twist[] the wires back together" causing one of the screws to later fall out.  Am. Comp. at 12.

---

[3]   http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-2016-8322.

Plaintiff subsequently returned to OU Medical Center where he was seen by a plastic surgeon.  Am. Comp. at 13.

By this action, Plaintiff asserts claims of excessive force against Defendants Harding and Irby.  Am. Comp. at 13-14.  Plaintiff asserts claims of deliberate indifference against Defendant Sheriff Whetsel based on the booking guards' failure to classify Plaintiff as a specific gang member and house him accordingly.  Am. Comp. at 16-20.  Plaintiff asserts a failure to protect claim against Sheriff Whetsel and Defendant Atoki, whom he identifies as the "4th floor unit manager."  Am. Comp. at 16-17.  With regard to Dr. Childs and Armor Health Correctional Services, Inc. ("Armor"), Plaintiff asserts claims of deliberate indifference.  Am. Comp. at 12-13, 19-20.

II. <u>Screening of Prisoner Complaints</u>

A federal district court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The same screening of a civil complaint filed *in forma pauperis* is required by 28 U.S.C. § 1915(e)(2).  After conducting an initial review, a court must dismiss a complaint or any portion of it presenting claims that are frivolous, malicious, fail to state a claim upon which relief may be

4

granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

In conducting this review, the reviewing court must accept the plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from the allegations, in the light most favorable to the plaintiff. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Although a pro se litigant's pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–1248 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations in a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Further, a claim is frivolous "where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989).

III. <u>Sheriff Whetsel</u>

Plaintiff asserts claims of deliberate indifference against Sheriff Whetsel in relation to Plaintiff's classification and placement within the Oklahoma County Jail. Plaintiff complains that unknown jail staff failed to follow proper jail policies

and procedures when booking him into the Oklahoma County Jail.  Am. Comp. at

16-20.  In support, Plaintiff states the following:

> Deliberate indifference  The booking guard ? that finger printed me
> 10-1-16 about 2:30 AM didn't follow policy and procedure and ask
> me my gang affiliation, or did I need to be house with my gang
> everytime I have been housed with my gang from the booking guard
> asking these questions.  This time they didn't ask or take notice to
> their own records of my gang affiliation.
>
> The gangs were segregated from each other in the jail due to high
> level of violence.  and retaliation from incidents that happened on the
> streets.  Sheriff John Whetsel was very much aware of the gang
> problems he had in Okla. County jail that the reason the jail was
> segregated.  Mr. Whetsel Job to insure staff is following policy and
> procedure!

Am. Comp. at 16-17.   Plaintiff makes similar allegations regarding the

classification guard who moved him on October 5, 2016.  Am. Comp. at 18-19.

Plaintiff also asserts a deliberate indifference claim against Sheriff Whetsel

based on the allegations supporting the same claim against Defendant Atoki.

Specifically, Plaintiff alleges Defendant Atoki failed to protect Plaintiff when he

was being assaulted by other inmates.  In support, Plaintiff states the following:

> failure to protect 10-5-16 Kayode Atoki was working outside of his
> Job detail!  At the time of my incident CF-16-8322 Mr. Atoki was 4
> floor unit manager, but he was working as pod officer none contact
> guard this day.  Before my attack started I noticed Mr. Atoki was
> paying attention to the computer, and not over seeing the pod like
> the pod officer was suppose to be doing!  When this Attack started
> I was knocked out.  I don't How aware Mr. Atoki when this attack
> started. This happen right in front of the pod office right in Mr. Atoki

line of sight if he would have been doing the duties of a pod officer. They say the individual involved in my attack left and took his shoes off came back with sandals on and continued stomping my face.

This incident CF-16-8322 happened right in front of pod office in Mr. Atoki line of sight.  To much damage was done multiple broken bones in my face (life support) massive reconstructive surgery.  Mr. Atoki ranked up Sgt after this incident Mr. Atoki was move to 8th floor was I was located after this Complaint was filed.

Am. Comp. at 14-15.

Personal participation is necessary for individual liability under Section 1983.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").  Plaintiff does not allege Sheriff Whetsel personally participated in any of the actions or events underlying his claims.  Instead, with regard to his booking and classification, Plaintiff merely states that Sheriff Whetsel was aware of the jail's policies and procedures, was aware of gang violence in general that occurred in the jail, and that it was Sheriff Whetsel's job to make sure staff followed policies and procedures.  Am. Comp. at 17.  Thus, Plaintiff's allegations against Sheriff Whetsel are not based on the Sheriff's own actions but solely on his supervisory status.  Although a supervisor may be held liable if he is affirmatively linked to the constitutional violation, "Section 1983 does not authorize liability under a theory of respondeat superior."  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th

Cir. 2011). As a result, government officials have no vicarious liability in a §1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quotations omitted).

Instead, a supervisor is liable only if he is "personally involved in the constitutional violation, and a sufficient causal connection [] exist[s] between the supervisor and the constitutional violation." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quotations omitted); *see also Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation). Thus, Plaintiff must base supervisory liability "'upon active unconstitutional behavior' and 'more than a mere right to control employees.'" *Davis v. Okla. Cnty.*, No. CIV–08–0550–HE, 2009 WL 2901180, at *4 (W.D. Okla. Sept. 3, 2009) (quoting *Serna*, 455 F.3d at 1153).

Plaintiff's allegations are wholly insufficient to establish supervisory liability against Sheriff Whetsel. Plaintiff fails to allege any affirmative link between Sheriff Whetsel and Plaintiff's classification. He does not indicate Sheriff Whetsel was aware of Plaintiff's classification or the jail staff's alleged failure to follow procedure. Nor does he allege Sheriff Whetsel was in any way

8

involved in Plaintiff's classification or in determining where Plaintiff was housed.

With regard to claims based upon Plaintiff's assault, Plaintiff does not set forth any factual allegations that would reasonably support an inference that Sheriff Whetsel was aware Plaintiff faced a particular risk of harm at the hands of other inmates or was present when the assault occurred. Accordingly, it is recommended the individual capacity claims against Defendant Whetsel be dismissed for failure to adequately allege personal participation. *Trujillo v. Williams*, 465 F.3d 1210, 1227–28 (10th Cir. 2006) (upholding dismissal of Section 1983 claims because the complaint did not indicate personal participation by the named defendants).

IV. <u>Dr. Childs and Armor</u>

A. <u>Medical Care</u>

Plaintiff's Second Amended Complaint includes claims of deliberate indifference against Defendants Armor and Dr. Childs, pursuant to 42 U.S.C. §1983. These claims are based upon Dr. Childs' medical treatment of Plaintiff. "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The Tenth Circuit recognizes two types of conduct amounting to deliberate indifference in the

context of prisoner medical care. "First, a medical professional may fail to treat a serious medical condition properly." *Sealock v. Colo.*, 218 F.3d 1205, 1211 (10th Cir. 2000). When this type of conduct is alleged, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Second, prison officials may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Plaintiff relies on the first example, arguing Dr. Childs failed to properly treat the injury Plaintiff suffered to his face.

As previously noted, the deliberate indifference test has an objective and subjective component. *Mata*, 427 F.3d at 751. To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The question

raised by the objective prong "is whether the alleged harm . . . is sufficiently serious . . . , rather than whether the symptoms displayed to the prison employee are sufficiently serious." *Mata*, 427 F.3d at 753.

To satisfy the subjective component, there must be evidence that "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Mata*, 427 F.3d at 751 (quoting *Farmer*, 511 U.S. at 837) (alteration omitted). The subjective component may be satisfied if the jury can "infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 842).

Such inference cannot be drawn when an inmate voices a "mere[ ] disagree[ment] with a diagnosis or a prescribed course of treatment," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999), because the inmate has a constitutional right only to medical care, but "not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)).  Instead, the subjective component of this inquiry requires an inmate

11

to provide evidence, whether direct or circumstantial, from which a jury could reasonably infer the medical officials consciously disregarded an excessive risk to the inmate's health or safety. *Self*, 439 F.3d at 1235. The Eighth Amendment protects inmates from the "infliction of punishment," it does not give rise to claims sounding in negligence or medical malpractice. *Id.* (quoting *Farmer*, 511 U.S. at 838); *see also Mata*, 427 F.3d at 758-59. Consequently, even if a prison official's actions fell below a reasonable standard of care, "'the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'" *Self*, 439 F.3d at 1233 (quoting *Perkins*, 165 F.3d at 811).

Presuming without deciding that Plaintiff can satisfy the objective component, Plaintiff has not presented sufficient factual allegations to support the subjective component of his claim. Plaintiff does not allege Dr. Childs failed or refused to provide medical care. Instead, he disagrees with Dr. Childs' treatment based on the fact that Dr. Childs' attempt to twist the wires together resulted in Plaintiff losing one of the screws in his mouth. Am. Comp. at 12-13. He also complains that Dr. Childs treated him at all, stating that "Dr. Childs should have originally sent me back to OU medical without trying to play a Doctor that does surgery, when he's only a jail physician." Am. Comp. at 13. Significantly,

12

however, Plaintiff is not entitled to a particular course of treatment. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment."); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir.1996) ("Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." (quoting *Estelle*, 429 U.S. at 107) (alterations omitted)).

At worst, Dr. Childs may have committed malpractice, but the Eighth Amendment does not redress such a claim. *See Estelle*, 429 U.S. at 107 (noting medical malpractice that does not fall under the Eighth Amendment); *see also Dawson v. Lloyd,* 642 F. App'x 883, 886 (10th Cir. 2016) (finding that "any arguable mistake or negligence" in nurses' administration of medication is insufficient to meet the subjective prong of deliberate indifference); *Tyler v. Sullivan*, No. 95-1232, 1996 WL 195295, *2 (10th Cir. April 22, 1996) (holding that "[a] difference of opinion as to the kind and timing of medical treatment does not rise to the level of an Eighth Amendment violation"); *Gumm v. Fed. Bureau of Prisons*, No. CIV-06-866-R, 2007 WL 3312785, at *8 (W.D. Okla. Nov. 6,

2007) ("Plaintiff's claims concerning P.A. Mier's 'improper' splint placement do not show deliberate indifference [] because mere negligence in treating a medical condition does not amount to a violation of the Eighth Amendment."); *Redding v. Marsh*, 750 F. Supp. 473, 478 (E.D. Okla. 1990) (holding that whether an alternative method of treatment was preferable "is a question directed towards a negligence claim" and not actionable under the Eighth Amendment).

To succeed on an Eighth Amendment claim, as opposed to a medical malpractice claim under state tort law, a plaintiff is required to identify "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.  Because Plaintiff failed to show such deliberate indifference, his claims based upon Dr. Childs' medical treatment should be dismissed.

B.    Classification and Placement

Plaintiff also asserts a deliberate indifference claim against Dr. Childs and Armor based upon the booking nurses' failure to place him in a particular pod based on his medical status.  Am. Comp. at 19-20.  He alleges the nurses' failure to place him in a different pod resulted in him being housed with rival gang members who subsequently assaulted Plaintiff.  *Id.*

(i).  Dr. Childs

14

Personal participation in an alleged constitutional deprivation is a required element of a 42 U.S.C. § 1983 action against an individual. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation." (quotations omitted)).  Plaintiff does not set forth any allegation that Dr. Childs was involved in Plaintiff's booking process.  He does not allege Dr. Childs was even aware of where Plaintiff was housed upon booking, much less was involved in the decision-making process.  Accordingly, the Court should dismiss this claim against Dr. Childs.

   (ii).  <u>Armor</u>

Plaintiff's claim as asserted against Armor should also be dismissed.  As previously noted, an Eighth Amendment claim of this nature requires both an objective and subjective component. *Mata*, 427 F.3d at 751.  Under the subjective component, Plaintiff must sufficiently allege the booking nurses (1) knew Plaintiff faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it. *Espinoza v. Brewster*, No. CIV-16-55-F, 2016 WL 3749033, at *6 (W.D. Okla. April 5, 2016) (citing *Farmer*, 511 U.S. at 837).  Plaintiff has not set forth any allegations allowing for an inference that the booking nurses were aware Plaintiff faced a substantial risk of harm by rival gang

15

members.   Accordingly, Plaintiff has not adequately asserted an Eighth

Amendment claim and it should be dismissed.

V. <u>Harding and Irby</u>

Plaintiff asserts Eighth Amendment claims against Defendants Harding and

Irby based on alleged excessive force during his arrest.  Am. Comp. at 13-14.  In

describing the events of his arrest, Plaintiff states the following:

> Chris Harding approached Asheena Yarbough car with his gun
> drawn ordering me to place my hands on the dash, which I did.  Chris
> Harding opened my door, and begun removing me from car.  Once
> out of the car Chris Harding begun trying to take me to the police car
> without telling me why he was containing me.  Chris Harding didn't
> try to place hand cuffs on me.  So I pulled away from him like what
> are you doing!  Chris Harding and James Irby begun wrestling with
> me.  Chris Harding then pushed me between both cars and yelled for
> James Irby to taser me causing me to drop to the ground and hit my
> head on ground repeatedly and left me laying on my stomach, not
> moving at all.  Chris Harding ordered James to taser me again.  After
> the second round of tasering, Chris Harding dropped to his knees
> then place me in a choke hold until Asheena started screaming!

Am. Comp. at 13.

In determining whether a § 1983 claim is barred under *Heck v. Humphrey*,

512 U.S. 477 (1994), the court must consider the relationship between the § 1983

claim and the conviction, including asking whether the plaintiff could prevail only

by "negat[ing] an element of the offense of which he [was] convicted."  *Id.* at 486

n.6.  In a recent case, the Tenth Circuit, quoting from *DeLeon v. City of Corpus*

*Christi*, 488 F.3d 649 (5th Cir. 2007), explained that sometimes an "excessive-force claim must be barred in its entirety because the theory of the claim is inconsistent with the prior conviction." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). In *DeLeon*, the court adopted the following reasoning from a prior unpublished opinion:

> [The plaintiff's] claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, [he] claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery . . . . [The plaintiff's] claims are distinguishable from excessive force claims that survive *Heck's* bar . . . . [The] suit squarely challenges the factual determination that underlies his conviction for resisting an officer. If [the plaintiff] prevails, he will have established that his criminal conviction lacks any basis.

*DeLeon*, 488 F.3d at 657 (citation omitted).

Similarly, in *Havens*, the plaintiff pleaded guilty to attempted first-degree assault of a defendant detective. *Havens*, 783 F.3d at 783. The court noted that the plaintiff "pleaded guilty to intentionally taking a substantial step toward causing serious bodily injury" to the detective by gunning the engine of his car "in an effort to get away" while the detective was in front of his car. *Id.* The court found the plaintiff's plea incompatible with his § 1983 claim because his complaint did not allege that the defendant used excessive force in response to an attempted assault by the plaintiff. *Id.* Instead, the plaintiff contended that the

detective's use of force was unreasonable because the plaintiff "did not have control of the car, he did not try to escape, he never saw [the detective], he did not drive toward [the detective], and he was hit by police vehicles and shot almost instantly after arriving on the scene." *Id.* The court stated, "This case is like *DeLeon*," and determined that the plaintiff's contention that "he did nothing wrong and did not intend or attempt to injure [the defendant] . . . could not sustain the elements of attempted first-degree assault under Colorado law and the factual basis for [the plaintiff's] plea." *Id.*

Here, Plaintiff was charged with two counts of Assault & Battery Upon a Police or Other Law Officer under Okla. Stat. tit. 21, §§ 646, 649-649.2, 650.[4] Additionally, Plaintiff pleaded *nolo contendere* to each charge and was sentenced accordingly. *Id.* Pursuant to the Oklahoma statutes under which Plaintiff was charged, Plaintiff, "without justifiable or excusable cause," inflicted great bodily injury upon each officer that included "bone fracture, protracted and obvious disfigurement, protracted loss or impairment of the function of a body part, organ or mental faculty, or substantial risk of death." Okla. Stat. tit. 21, §§646, 649, 650.

---

[4]   http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-2016-8283&cmid=3460519

Plaintiff asserts that Officer Irby tasered him when Plaintiff was already laying on the ground and Officer Harding subsequently held him in a choke-hold, choking him until a third party present at the scene started screaming. *See supra*. However, just as in *Havens*, Plaintiff does not allege Defendants used excessive force in response to an assault by the plaintiff. Am. Comp. at 13. According to Plaintiff, his only action was to pull away from Harding. *Id.* Plaintiff merely pulling away from Harding would not sustain the elements of assault under Oklahoma law and the factual basis for Plaintiff's plea of *nolo contendere*. Okla. Stat. tit. 21, §§ 646, 649, 650; *see Havens*, 783 F.3d at 784. Therefore, Plaintiff's excessive force claim against Defendants Irby and Harding should be dismissed. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) (citing cases).

VI.  Official Capacity Claims

Plaintiff asserts claims against the individual Defendants in their official and individual capacities. Am. Comp. at 7-9. Claims against an official in his official capacity are essentially claims against the entity that the official represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Here, the individual Defendants arguably represent the City of Bethany and Oklahoma County. A municipality or county cannot be held responsible for the unconstitutional acts of its officers absent some wrongful action by the

19

municipality or county.  To state a claim under § 1983 against a municipality or county, a plaintiff must show "(1) a municipal [or county] employee committed a constitutional violation, and (2) a municipal [or county] policy or custom was the moving force behind the constitutional deprivation."  *Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009) (quotations omitted).

In the present case, the Court has already concluded Plaintiff has failed to sufficiently allege a viable constitutional claim against Sheriff Whetsel, Dr. Childs, Officer Harding, and Officer Irby. Moreover, Plaintiff does not identify any policy or custom motivating Defendants' allegedly unlawful actions. Therefore, Plaintiffs' official capacity claims against these Defendants should be dismissed.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's claims against Defendants Sheriff John Whetsel, James Irby, Chris Harding, Jerry Childs, D.O., and Armor be dismissed WITHOUT PREJUDICE pursuant to 28 U.S.C. §§1915A(b), 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.  In light of this recommendation, the undersigned also recommends the Motion to Dismiss Second Amended Complaint by Defendant John Whetsel in

his Individual Capacity with Brief in Support (Doc. #88) be denied as moot.

Plaintiff is advised of the right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by ___June 4th__, 2018, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

Dated this ___15th__ day of _May_, 2018.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE